Steven A. Santos
1224 S Street
Eureka CA 95501
(503)709-3450
santos@peak.org

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVSION

| | |
|---|---|
| Steven A. Santos | Case Number: CV22 7485 RMI |
| Plaintiff | |
| vs. | COMPLAINT |
| County of Humboldt | |
| Defendant | |

1. **Jurisdiction.** This court has jurisdiction over this complaint because it arises under the laws of the United States.

2. **Venue.** Venue is appropriate in this court because both the plaintiff and defendant are located in this district, and the acts or omissions giving rise to this lawsuit occurred in this district.

3. **Intradistrict Assignment.** This lawsuit should be assigned to the Eureka Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Humboldt County.

COMPLAINT          CASE NO.: _____

PAGE NO. __1__ OF 7

4. Plaintiff Steven A. Santos is an employee of Humboldt County and has worked for the Planning and Building Department since 2006 and is currently employed as a Senior Planner.

5. Defendant County of Humboldt is a public sector employer. The Clerk of the Board of Supervisors is located at 825 Fifth Street, Room 111, Eureka, California 95501.

6. **Statement of Facts**: For background, plaintiff has a qualifying permanent disability under the Americans with Disabilities Act (ADA). Plaintiff notified defendant of disability on August 8, 2016 and shared the specific medical condition with defendant. Plaintiff participated in a lengthy, stressful, and hostile interactive process over several years and provided all documents requested by defendant including three separate doctor's notes which included a detailed medical questionnaire conducted by a qualified and licensed medical professional who specialized in plaintiff's medical condition. Defendant received a complete and detailed medical questionnaire on January 18, 2019. Defendant accepted the medical documentation as complete and sufficient because through defendant's actions on March 19, 2019, and a meeting on July 18, 2019, plaintiff was given an accommodation consisting of remaining in a private office and a flexible schedule. The Senior Planner position description has not changed since August 1990.

7. On February 5, 2021, in a meeting with his supervisor, plaintiff was told he would be required to perform work in a physical setting outside his office in an environment that was known to aggravate his medical condition. When plaintiff attempted to defend his rights and accommodation, defendant told plaintiff that he did not have a disability or an accommodation and would have to go through the interactive process all over again.

8. Even though defendant later acknowledged in an April 9, 2021, letter that an accommodation was granted in 2019, defendant hired a third-party contractor (agent) to interact with plaintiff. On May 20, 2021, defendant's agent sent plaintiff a letter stating plaintiff would be subject to a fitness for duty exam based on the false premise that plaintiff's current treating and primary care doctor was not qualified. Plaintiff's current primary care doctor is different

COMPLAINT          CASE NO.: _____

PAGE NO. 2   OF 7

1  from the doctor that generated the medical questionnaire in 2019 but is a licensed and qualified
2  medical doctor who carries out the treatment plan of the original treating specialist. Plaintiff
3  challenged and corrected this false premise in email correspondence on May 25 and May 26,
4  2021, but defendant continued to use this false premise as justification for a fitness for duty exam
5  even though complete and sufficient medical documentation had previously been provided.

6      9.    Plaintiff made multiple attempts to communicate with and receive answers from
7  defendant regarding his ADA status and the interactive process but received no response. On
8  June 14, 2021, defendant's agent scheduled a meeting under the premise that plaintiff's questions
9  would be answered.  Plaintiff was not given any opportunity regarding the agenda or
10 composition of the June 14, 2021, interactive meeting. Plaintiff prepared a document relevant to
11 the interactive process and provided it to defendant's agent prior to the meeting but defendant's
12 agent did not distribute the document to decision makers and arbitrarily excluded it from the
13 meeting record.  For the meeting, defendant's agent altered the medical questionnaire provided
14 by Plaintiff in 2019 by re-transcribing it which resulted in the omission of words and removal of
15 relevant formatting. At the June 14, 2021, defendant decided that the medical documentation in
16 the record was not sufficient to made accommodation decisions and that the plaintiff would be
17 subject to a fitness for duty exam.  Following the June 14, 2021, meeting in emails between
18 plaintiff and defendant's Assistant Director of Human Resources, defendant acknowledged that
19 the medical documentation in the record had been previously deemed sufficient to make
20 accommodation decisions.  Defendant further communicated on July 12, 2021, the likelihood
21 that defendant would reject anything defendant may receive from plaintiff's current doctor and
22 proceed with its own third-party fitness for duty exam.

23     10.   On July 14, 2021, plaintiff requested from defendant copies of all records that
24 relate to his ADA status. Defendant did not provide any records. Plaintiff hired an attorney to
25 request the records and on October 14, 2021, defendant gave plaintiff copies of his job
26 applications and performance evaluations instead of providing any documents related to the
27 interactive process or accommodation. Plaintiff subsequently made additional requests on
28

COMPLAINT          CASE NO.: _____

PAGE NO. 3  OF 7

November 9, 2021, and on February 1, 2022, for copies of his ADA records and, as of the date of this filing, defendant has failed to provide any documents responsive to plaintiff's request.

11. Also on July 14, 2021, plaintiff made a complaint to Human Resources under defendant's Equal Employment Opportunity policy. Defendant never responded to complaint.

12. Additionally, on July 14, 2021, plaintiff made a complaint to the EEOC and informed defendant of the complaint.

13. On July 26, 2021, defendant provided plaintiff with a medical questionnaire it characterized as "supplemental." Upon review by plaintiff, the questionnaire did not seek to supplement the existing medical documentation but was designed to dismantle plaintiff's accommodation. The cover letter to the questionnaire contradicted statements made by defendant at the June 14, 2021, interactive meeting. The questionnaire contained questions that were out of the scope of medical inquiry allowed under the ADA. The questionnaire included questions that were already answered such as the presence of a permanent disability. The questionnaire included questions that were bizarre and impractical given defendant's actual knowledge of plaintiff's specific medical condition. Plaintiff objected to the questionnaire and defendant ignored the objections and failed to discuss or meet with the plaintiff.

14. On September 1, 2021, plaintiff informed defendant that an interview was scheduled with the California Department of Fair Employment and Housing regarding a complaint of retaliation. Defendant continued to fail to meet with plaintiff to resolve concerns and objections.

15. On November 2, 2021, plaintiff received a Notice of Directive from defendant requiring him to submit to a fitness for duty exam.

16. Also on November 2, 2021, plaintiff's union representative sent defendant correspondence challenging the legal basis of the Notice of Directive. Defendant did not respond to the November 2, 2022, correspondence from plaintiff's union representative.

17. On November 9, 2021, plaintiff wrote a letter to defendant describing factual errors and omissions in the Notice of Directive. Plaintiff requested that the fitness for duty be

COMPLAINT           CASE NO.: _____

PAGE NO. 4 OF 7

postponed and requested a meeting. Defendant did not respond to plaintiff's November 9, 2022, letter.

18. On November 15, 2021, out of fear of discipline in the form of termination for insubordination, plaintiff attended the fitness for duty exam. Defendant's examiner did not ask the questions that were on the so-called supplemental questionnaire. Defendant through its examiner invaded the personal medical privacy of plaintiff by asking questions that were not disability related or job related. Defendant's examiner asked questions that were out of scope of the medical documentation allowed under the ADA. The exam was witnessed by a union representative and a summary was created by plaintiff and the representative.

19. On December 7, 2021, plaintiff sent a letter alerting defendant that defendant's examiner invaded plaintiff's medical privacy. Plaintiff requested that he be informed of the agenda, purpose, and goal in advance of all future ADA related meetings. Defendant never responded to plaintiff's December 7, 2021, letter.

20. On January 26, 2022, defendant conducted a meeting with plaintiff and did not disclose the purpose of the meeting in advance. Defendant sent an email regarding the topic of the meeting to plaintiff one hour before the meeting which plaintiff received 30 minutes before the meeting. Plaintiff attended the meeting remotely from home while sick with Covid and defendant carried out the meeting anyway. Defendant informed plaintiff that the medical questionnaire was sent to defendant's examiner after the exam had concluded and the purpose of the meeting was to go over the examiner's responses. Plaintiff objected to the use of the examiner's response in the interactive process. The defendant's own examiner rejected many of the questions that plaintiff had objected to previously. The fitness for duty exam did not add any new information to what was already in the record and served no purpose other than to intimidate plaintiff.

21. Defendant followed the January 26, 2022, interactive meeting with a summary on January 31, 2022. In that summary defendant took away plaintiff's flexible schedule accommodation even though it was not the subject of the interactive process over the previous

COMPLAINT          CASE NO.: _____

PAGE NO. 5 OF 7

year or included in the examiner's questionnaire. Defendant provided plaintiff a transcribed copy of the examiners responses that included redactions and alterations. Plaintiff requested copies of the documents sent to the examiner as well as unaltered copies of the original documents given to defendant by its examiner. Defendant has failed to provide copies of these documents to plaintiff.

22. Plaintiff continues to experience constant fear and anxiety that his accommodation and ability to work will be taken away arbitrarily at any time. This fear and anxiety include being subjected to additional capricious and invasive medical inquiry if he attempts to defend or exercise his rights in the future. This fear and anxiety resulted in and continues to cause stress that exacerbates plaintiff's medical condition which caused and continues to cause significant physical pain, sleep loss, emotional distress, missing work, and disruption to life activities. Plaintiff informed defendant on several occasions that defendant's conduct during the interactive process was causing pain suffering but defendant never responded to or discussed this issue with plaintiff, and defendant intensified the negative treatment as the interactive process went on. Plaintiff attempted multiple options to mediate and resolve his concerns, but defendant failed to participate or follow its own grievance procedures.

23. On August 31, 2022, plaintiff received a right to sue letter from the Civil Rights Department, State of California that is dual filed with state case number 202108-14374305 and EEOC number 37A-2022-00346-C.

24. On October 3, 2022, plaintiff received a determination and notice of rights letter (dated September 29, 2022) from the US Equal Employment Opportunity Commission verifying he has the right file a lawsuit under federal law within 90 days of receiving the determination and notice letter. This complaint is timely filed within the 90 days.

25. **Claims.** Defendant violated Titles I and V of the Americans with Disabilities Act.

26. Claim #1: Defendant committed retaliation against the Plaintiff for engaging in protected activities. Specifically, plaintiff 1) asked for ADA accommodation to be respected; 2) made complaint under county Equal Employment Opportunity policy; 3) made complaint to

COMPLAINT                CASE NO.: _____

PAGE NO. 6   OF 7

EEOC; made complaint to DFEH; 4) expressed opposition regarding content of medical questionnaire; 5) attempted to gather evidence by requesting records.

27. Plaintiff was subjected to materially adverse action that might well deter a reasonable person from engaging in protected activities. Specifically, plaintiff was 1) subjected to an illegal fitness for duty exam; 2) subjected to a predatory medical questionnaire; 3) subjected to an invasion of personal medical privacy; 4) told he did not have a disability or accommodation while having protected status; 5) subjected to the removal of the flexible schedule portion of his accommodation without due process.

28. There exists a convincing mosaic of circumstantial evidence demonstrating defendant's intent to subject plaintiff to adverse action for engaging in protected activities including the defendant: 1) contriving the fitness for duty exam under false pretenses; 2) admitting the previous medical documentation in the record was sufficient; 3) suppressing, altering, and destroying information and records; 4) engaging in a pattern of bad faith such as inconsistent and shifting explanations, suspicious timing, and failing to meet with plaintiff or respond to plaintiff's correspondences.

29. Claim #2: Defendant intentionally interfered with plaintiff's exercise of rights under the Americans with Disabilities Act. Specifically, defendant withheld records and documents for which plaintiff is entitled and did not provide plaintiff adequate notice or opportunity to prepare and participate in interactive meetings.

30. **Request for Relief.** 1) Reimbursement of $2,052 in attorney's fees and court costs; 2) Restoration of 160 hours of sick leave; 3) $150,000 in non-economic pain and suffering damages.

31. Plaintiff is not requesting a jury trial.

Date: 11/23/22     Sign Name: _Steven A. Santos_

Print Name: Steven A. Santos

COMPLAINT          CASE NO.: _____

PAGE NO. 7 OF 7