1  Steven A. Santos
   1224 S Street
2  Eureka CA 95501
   (503)709-3450
3  santos@peak.org

4  Pro Se Plaintiff

5                    **UNITED STATES DISTRICT COURT**

6                    **NORTHERN DISTRICT OF CALIFORNIA**

7                              EUREKA DIVSION

8                                              )
9  Steven A. Santos                            )  Case Number: 1:22-cv-07485-RMI
                                                )
10              Plaintiff                       )
                                                )
11       vs.                                    )  **FIRST AMENDED COMPLAINT**
                                                )
12 County of Humboldt                           )
                                                )
13              Defendant                       )
                                                )
14                                              )
                                                )
15                                              )
                                                )
16                                              )
                                                )
17                                              )
                                                )
18                                              )
                                                )
19

20      1.    **Jurisdiction.** This court has jurisdiction over this complaint because it arises

21 under the laws of the United States such as 42 U.S.C. §12203 and 42 U.S.C. §12112.

22      2.    **Venue.** Venue is appropriate in this court because both the plaintiff and defendant

23 are located in this district, and the acts or omissions giving rise to this lawsuit occurred in this

24 district.

25      3.    **Intradistrict Assignment.** This lawsuit should be assigned to the Eureka

26 Division of this Court because a substantial part of the events or omissions which give rise to this

27 lawsuit occurred in Humboldt County.

28

4. Plaintiff Steven A. Santos is an employee of Humboldt County and has worked for the Planning and Building Department since 2006 and is currently employed as a Senior Planner. Plaintiff has a qualifying disability under the Americans with Disabilities Act (ADA).

5. Defendant County of Humboldt is a public sector employer with significantly more than 15 employees and is subject to the ADA. The Clerk of the Board of Supervisors is located at 825 Fifth Street, Room 111, Eureka, California 95501.

6. **Statement of Facts**: Plaintiff has a qualifying disability under the ADA because he has been diagnosed by an appropriate medical professional with chronic migraines (medical condition). Per the diagnosis and medical documentation, the medical condition represents a physical impairment that is permanent and when acute interferes with one or more major life activities, including caring for self, concentrating, hearing, interacting with others, learning, reading, seeing, speaking, thinking, and working. Plaintiff notified defendant of disability on August 8, 2016 and also shared the specific medical condition with defendant. Plaintiff participated in a lengthy, stressful, and hostile interactive process over several years and provided all documents requested by defendant including three separate doctor's notes which included a detailed medical questionnaire conducted by an appropriate and licensed medical professional who specialized in plaintiff's medical condition. Defendant received a complete, detailed and sufficient medical documentation on January 18, 2019. Defendant accepted the medical documentation as complete and sufficient and through defendant's actions on March 19, 2019, and a meeting on July 18, 2019, plaintiff was given an accommodation consisting of remaining in a private office and a flexible schedule. The Senior Planner position description has not changed since August 1990.

7. On February 5, 2021, in a meeting with his supervisor, plaintiff was told he would be required to perform work in a physical setting other than his office in an environment that was known to aggravate his medical condition. Specifically, Plaintiff was told that he would have to sit at the front counter even when customers were not present or in need of assistance. Plaintiff did not object to assisting customers as he has successfully accomplished that task as needed in the past by phone, by zoom, and in person. Plaintiff objected to unnecessarily being subjected to

physical stimuli that aggravates his medical condition when there were no customers. When plaintiff attempted to defend his rights and accommodation, defendant told plaintiff that he did not have a disability or an accommodation and would have to go through an interactive process all over again.

8. Even though defendant later acknowledged in an April 9, 2021, letter that an accommodation was granted in 2019, defendant hired a third-party contractor (agent) to interact with plaintiff. On May 20, 2021, defendant's agent sent plaintiff a letter stating plaintiff would be subject to a fitness for duty exam based on the false premise that plaintiff's current treating and primary care doctor was not qualified. Plaintiff's current primary care doctor is different from the doctor that generated the medical questionnaire in 2019 but is a licensed and qualified medical doctor who carries out the treatment plan of the original treating specialist and both doctors worked in the same practice together. Plaintiff challenged and corrected this false premise in email correspondence on May 25 and May 26, 2021, but defendant continued to use this false premise as justification for a fitness for duty exam even though complete and sufficient medical documentation had previously been provided and accepted by defendant and was the basis for the portion of the accommodation in question.

9. Plaintiff made multiple attempts to communicate with and receive answers from defendant regarding his ADA status and the interactive process but received no response. On June 14, 2021, defendant's agent scheduled a meeting under the premise that plaintiff's questions would be answered. Plaintiff was not given any opportunity regarding the agenda or composition of the June 14, 2021, interactive meeting. Plaintiff prepared a document relevant to the interactive process and provided it to defendant's agent prior to the meeting but defendant's agent did not distribute the document to decision makers and intentionally excluded it from the meeting record. For the meeting, defendant's agent altered the medical questionnaire provided by Plaintiff in 2019 by re-transcribing it which resulted in the omission of words and removal of relevant formatting. At the June 14, 2021, defendant decided that the medical documentation in the record was not sufficient to made accommodation decisions and that the plaintiff would be subject to a fitness for duty exam. Following the June 14, 2021, meeting in emails between

plaintiff and defendant's Assistant Director of Human Resources, defendant acknowledged that the medical documentation in the record had been previously deemed sufficient to make accommodation decisions. Defendant further communicated on July 12, 2021, the likelihood that defendant would reject anything defendant may receive from plaintiff's current doctor and proceed with its own third-party fitness for duty exam.

10. On July 14, 2021, plaintiff requested from defendant copies of all records that relate to his ADA status. Defendant did not provide any records. Plaintiff hired an attorney to request the records and on October 14, 2021, defendant gave plaintiff copies of his job applications and performance evaluations instead of providing responsive documents related to the interactive process or accommodation. Plaintiff subsequently made additional requests on November 9, 2021, and on February 1, 2022, for copies of his ADA related records and, as of the date of this filing, defendant has failed to provide any documents responsive to plaintiff's request.

11. Also on July 14, 2021, plaintiff made a complaint to Human Resources under defendant's Equal Employment Opportunity policy. Defendant never responded to complaint.

12. Additionally, on July 14, 2021, plaintiff made a complaint to the EEOC and informed defendant of the complaint.

13. On July 26, 2021, defendant provided plaintiff with a medical questionnaire it characterized as "supplemental." Upon review by plaintiff, the questionnaire did not seek to supplement the existing medical documentation but was designed to dismantle plaintiff's accommodation. The cover letter to the questionnaire contradicted statements made by defendant at the June 14, 2021, interactive meeting. The questionnaire contained questions that were out of the scope of medical inquiry allowed under the ADA. The questionnaire included questions that were already answered such as the presence of a permanent disability. The questionnaire included questions that were bizarre and impractical given defendant's actual knowledge of plaintiff's specific medical condition. Plaintiff objected to the questionnaire and defendant ignored the objections and failed to discuss or meet with the plaintiff.

14. On September 1, 2021, plaintiff informed defendant that an interview was scheduled with the California Department of Fair Employment and Housing to investigate Plaintiff's complaint. Defendant continued to fail to meet with plaintiff to resolve concerns and objections.

15. On November 2, 2021, plaintiff received a Notice of Directive from defendant requiring him to submit to a fitness for duty exam.

16. Also on November 2, 2021, plaintiff's union representative sent defendant correspondence challenging the legal basis of the Notice of Directive. Defendant did not respond to the November 2, 2022, correspondence from plaintiff's union representative.

17. On November 9, 2021, plaintiff wrote a letter to defendant describing factual errors and omissions in the Notice of Directive. Plaintiff requested that the fitness for duty be postponed and requested a meeting. Defendant did not respond to plaintiff's November 9, 2022, letter.

18. On November 15, 2021, out of fear of discipline in the form of termination for insubordination, plaintiff attended the fitness for duty exam. Defendant's examiner did not ask the questions that were on the so-called supplemental questionnaire. Defendant through its examiner invaded the personal medical privacy of plaintiff by asking questions that were not disability related or job related. Defendant's examiner asked questions that were out of scope of the medical documentation allowed under the ADA. The exam was witnessed by a union representative and a summary was created by plaintiff and the representative.

19. On December 7, 2021, plaintiff sent a letter alerting defendant that defendant's examiner invaded plaintiff's medical privacy. Plaintiff requested that he be informed of the agenda, purpose, and goal in advance of all future ADA related meetings. Defendant never responded to plaintiff's December 7, 2021, letter.

20. On January 26, 2022, defendant conducted a meeting with plaintiff and did not disclose the purpose of the meeting in advance. Defendant sent an email regarding the topic of the meeting to plaintiff one hour before the meeting which plaintiff received 30 minutes before the meeting. Plaintiff attended the meeting remotely from home while sick with Covid and

defendant carried out the meeting anyway. Defendant informed plaintiff that the medical questionnaire was sent to defendant's examiner after the exam had concluded and the purpose of the meeting was to go over the examiner's responses. Plaintiff objected to the use of the examiner's response in the interactive process. The defendant's own examiner rejected questions that plaintiff had objected to previously. The fitness for duty exam did not add any new information to what was already in the record and served no purpose other than to intimidate plaintiff.

21. Defendant followed the January 26, 2022, interactive meeting with an accommodation summary on January 31, 2022. In that summary defendant took away plaintiff's flexible schedule accommodation even though the flexible schedule was not the subject of the interactive process over the previous year or included in the examiner's questionnaire. Defendant provided plaintiff a transcribed copy of the examiners responses that included redactions and alterations. Plaintiff requested copies of the documents sent to the examiner as well as unaltered copies of the original documents given to defendant by its examiner. Defendant has failed to provide copies of these documents to plaintiff.

22. Plaintiff continues to experience constant fear and anxiety that his accommodation and ability to work will be taken away arbitrarily at any time. This fear and anxiety include being subjected to additional capricious and invasive medical inquiry if he attempts to defend or exercise his rights in the future. This fear and anxiety resulted in and continues to cause stress that exacerbates plaintiff's medical condition which caused and continues to cause significant physical pain, sleep loss, emotional distress, missing work, and disruption to life activities. Plaintiff informed defendant on several occasions that defendant's conduct during the interactive process was causing pain and suffering, but defendant never responded to or discussed this issue with plaintiff, and defendant intensified the negative treatment as the interactive process went on. Plaintiff attempted multiple options to mediate and resolve his concerns, but defendant failed to participate or follow its own grievance procedures.

///

///

23. On August 31, 2022, plaintiff received a right to sue letter from the Civil Rights Department, State of California that is dual filed with state case number 202108-14374305 and EEOC number 37A-2022-00346-C.

24. On October 3, 2022, plaintiff received a determination and notice of rights letter (dated September 29, 2022) from the US Equal Employment Opportunity Commission verifying he has the right file a lawsuit under federal law within 90 days of receiving the determination and notice letter.  The original complaint was timely filed within the 90 days.

25. **Claims.** Defendant committed retaliation and interference with exercise of rights under the ADA per 42 U.S.C. §12203 and Defendant committed discrimination per 42 U.S.C. §12112.

**Claim #1 Retaliation**

26. Defendant committed retaliation against the Plaintiff per 42 U.S.C. 12203(a) for engaging in protected activities.  Plaintiff engaged in the following protected activities: 1) Plaintiff asked for ADA accommodation to be respected on or around February 5, 2021; 2) Plaintiff made complaint under county Equal Employment Opportunity policy on July 14, 2021; 3) Plaintiff made complaint to EEOC on July 14, 2021. Defendant was given notice of EEOC complaint by Plaintiff; 4) Plaintiff participated in an investigatory interview by DFEH on or around October 28, 2021.  Defendant was given notice of the interview by the Plaintiff; 5) Plaintiff expressed opposition regarding content of medical questionnaire; and 6) Plaintiff attempted to gather evidence by requesting records on multiple occasions.

27. Plaintiff was subjected to multiple materially adverse actions that might well deter a reasonable person from engaging in protected activities.  Specifically, plaintiff was 1) subjected to an illegal fitness for duty exam; 2) subjected to a predatory medical questionnaire; 3) subjected to an invasion of personal medical privacy; 4) subjected to the removal of the flexible schedule portion of his accommodation without due process.

28. While a fitness for duty exam can be part and parcel of an interactive process, it is possible for it to be deployed by an employer for retaliatory purposes.  As described in EEOC guidance, "If an individual provides sufficient documentation to show the existence of an ADA

disability and the need for reasonable accommodation, continued efforts by the employer to require that the individual see the employer's health professional could be considered retaliation." (Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA October 17, 2002, EEOC-CVG-2003-1, at Note 33.) Plaintiff had provided medical documentation that defendant had deemed sufficient for the purposes of establishing the private office accommodation. Additionally, there was no business necessity. Plaintiff was being directed to sit at front counter outside his private office accommodation when there were no customers present needing help and other employees were allowed to be paged to the front counter from their offices when customers needed assistance. It is a reasonable to assert that the application of unequal power of an employer over an employee and requiring a fitness for duty exam that is unwarranted would have a deterring effect on a person.

29. Regarding the medical questionnaire, there is no requirement under the ADA for medical documentation. While requesting documentation is discretionary on the part of the employer, there are limits on the scope of the inquiry. The EEOC provides the following guidance: "Documentation is sufficient if it: (1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed." (Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA July 26, 200, EEOC-CVG-2000-4, at 10.) The medical documentation Plaintiff provided Defendant on January 18, 2019 met the sufficiency test because it described the nature, severity and duration of Plaintiffs impairment. Specifically, it described Plaintiff's condition as neurological in nature, stated which activities could not be performed while the condition was acute, and described the condition as permanent. As discussed in paragraph 6, the documentation provided by Plaintiff described the activities the impairment limits and the extent to which the impairment limits Plaintiff's ability to perform certain activities. The documentation provided by Plaintiff in 2019 substantiated why the reasonable accommodation is needed with his doctor stated that she believed Plaintiff's medical condition would worsen if he were to be removed from his office.

FIRST AMENDED COMPLAINT                          CASE NO.: 1:22-cv-07485-RMI

The medical questionnaire Defendant issued on July 26, 2021, while disguised as a supplemental inquiry, was an attempt to undue the reasonable accommodation.  This assertion is supported when it is observed that the July 2021 questionnaire re-asked identical questions that were already sufficiently answered, and previously accepted by Defendant, in the January 2019 medical documentation provided by Plaintiff.  The format of the medical questionnaire also changed from April 2021 to July 2021.  And Defendant's own examiner rejected many of the questions in the July 2021 questionnaire as evidenced by Defendant's summary of the examiner's response.  Defendant also had the benefit of knowing Plaintiffs exact medical condition and had access to publicly available resources from respected sources such as askjan.org.  Defendant also had the benefit of interacting with and observing Plaintiff for approximately four and half years after being notified of Plaintiff's exact medical condition.  The Defendant had plenty of information at its disposal making additional medical inquiry unnecessary.  Any medical inquiry, even those authorized under the ADA, represent an intrusion into a person's life which is why there are specific limits on how and when an inquiry can be conducted.  It is reasonable to assert that unnecessary medical inquiry, asking erroneous questions, and revisiting questions sufficiently answered could result in an adverse experience that would deter a person from engaging in protected activity.

30.     Regarding the invasion of medical privacy, any medical inquiry under the ADA must be both job related and disability related.  The Defendant's examiner attempted to obtain medical information that was neither job related, nor disability related.  At the time of the exam, the Defendant knew Plaintiff's exact medical condition, chronic migraines.  It was beyond the permitted scope for Defendant's examiner to ask about non-migraine treatments Plaintiff was receiving and non-migraine medical history. Defendant's examiners asked about all medications, family history, all surgeries and essentially treated the inquiry as if there was a consensual doctor patient relationship.  Defendant, through its examiner, even suggested Plaintiff take certain medications which conflicted with his current treatment plan as administered by Plaintiff's primary care physician.  An employer through its agents should not be recommending specific medical treatment as part of its response to an ADA process.  It is reasonable to assert that being

subjected to an involutory medical inquiry that violates the job related and disability related limits of what is permitted under the ADA would have an adverse effect on a person and deter them from engaging in protected activity.

31. Plaintiff also experienced the adverse action of having a portion of his accommodation taken away arbitrarily. Documented as recently as the April 9, 2021, correspondence from Defendant, part of Plaintiff's reasonable accommodation in addition to maintaining a private office, includes a flexible schedule. The flexible start time allows Plaintiff to take medication and allow it to take effect as well as allows Plaintiff to engage in physical therapies and mindfulness exercises prior to engaging in a stressful workday. On January 21, 2022, Defendant generated an updated summary of Plaintiff's accommodation, and the flexible schedule was taken out even though it wasn't identified as being part of the interactive process and medical inquiry that occurred in 2021. Other employees are granted flexible schedules without having to go through an ADA process. Dropping the flexible schedule from the accommodation summary was arbitrary and done without due process. Losing one part of an accommodation (flexible schedule) as a result of defending another part (private office) is an adverse experience that would deter someone from engaging in protect activities.

32. There exists a convincing mosaic of circumstantial evidence demonstrating defendant's retaliatory animus. 1) The fitness for duty exam was contrived under false pretenses. The June 14, 2021, interactive meeting was structured around a pre-determined outcome and to justify, after the fact, a decision that had been made prior to the meeting as documented in May 2021 correspondence from Defendant's agent. The notice of directive for the fitness for duty exam was based on a false statement regarding qualifications of Plaintiff's current treating physician. Additionally, there was no business necessity to justify the exam. Furthermore, the medical documentation provided in January 2019 had met the test for sufficiency and Defendant, through its actions in 2019, written correspondence in April 2021, and follow up emails in July 2021 acknowledged the medical documentation was sufficient. 2) Records were suppressed, altered, or destroyed. Documentation provided by Plaintiff for the June 14, 2021 meeting was withheld from attendees and later withheld from the meeting records. Defendant altered the

content and formatting of the Plaintiff's January 2019 medical documentation as well as the results of the November 2021 fitness for duty exam. Defendant failed to provide any ADA related records despite repeated requests. Defendant deleted the email account of the Assistant Director of Human Resources even though it knew there was an active investigation by DFEH at the time.  3) Defendant engaged in an ongoing pattern of bad faith.  For example, since informing Defendant of his disability on August 8, 2016, Plaintiff has been told he is going to be removed from his private office six times.  Defendant did not give Plaintiff adequate time to prepare for the January 26, 2022, meeting and conducted the meeting after Plaintiff informed Defendant that he was at home sick.  Defendant failed to meet with or address Plaintiff's legitimate questions and concerns about the interactive process and the medical questionnaire. Defendant didn't respond to complaint made under county policy.  Defendant didn't respond to multiple correspondences challenging notice of directive for fitness for duty exam.  Defendant didn't respond to correspondence alerting it to the invasion of medical privacy by its examiner. Defendant didn't follow its own grievance procedures and failed to meet with Plaintiff per its own merit system rules.  4) Defendant has provided inconsistent and shifting explanations.  For example, starting in February 2021, Defendant said Plaintiff had no disability or accommodation then Defendant said Plaintiff had only a temporary accommodation.  Defendant then said Plaintiff job description had changed even though it hasn't changed since 1990. Defendant then claimed medical documentation was insufficient then admitted it had been sufficient.  5) There were multiple occurrences of suspicious timing.  Defendant immediately sought a fitness for duty exam following Plaintiff defending his existing accommodation. The medical questionnaire changed between April 2021 and July 2021 and the messaging shifted from the June 2021 interactive meeting summary and the correspondence associated with the July 2021 questionnaire.  The intervening event prior to the July 2021 questionnaire and correspondence was that Plaintiff made complaints and sought to gather evidence by requesting records.  The notice of directive for the fitness for duty exam occurred right after Plaintiff attended an investigatory interview with DFEH.  Defendant did not send the July 2021 medical questionnaire

FIRST AMENDED COMPLAINT                               CASE NO.: 1:22-cv-07485-RMI

11

to its medical examiner until after the medical exam was conducted. Questionnaires are typically given to doctors prior to appointments so they can be discussed during the exam.

**Claim #2 Interference with Exercise of Rights Under the ADA**

33. The ADA requires employers to engage in a good faith process. The process the Defendant engaged in particularly after Plaintiff defended his accommodation in February 2021 was not in good faith. There is significant overlap with the facts pleaded under Claim #1 demonstrating interference. As described in paragraph 26, Plaintiff engaged in numerous protected activities. Plaintiff was also engaged in the exercise or enjoyment of ADA protected rights when he defended his accommodation in February 2021. The Defendant coerced, threatened, intimidated, or interfered on the account of the protected activities. For example, the repeated threats of a fitness for duty exam even though the medical documentation in the record was sufficient and the intimidation of being asked medical questions that were not disability related or job related are examples of the unlawful conduct prohibited in 42 USC 12203(b). Defendant carried out these threats and intimidating actions which had a direct nexus to the exercise or enjoyment of ADA rights. Plaintiff experienced a distinct and palpable injury (Brown v. City Tucson 336 F.3d 1181 9th Cir. 2003) from the interference when his flexible schedule was arbitrarily taken away in the January 2022 accommodation summary. There is also the insidious injury of being denied a reasonable amount of certainty and stability. When an accommodation is granted, there is more being provided than just the physicality of the private office or the implementation of a flexible schedule. The accommodation enables the person with the disability to enjoy the same reasonable confidence and assurance of able-bodied co-workers in steady employment. Being told six times over five years that an accommodation was going to be taken away or being told that one does not have a disability or an accommodation when one has been documented, intentionally and severely undermines that confidence in the stability of an accommodation. Being told that one cannot rely on their accomodation is the same as being told that one's ability to work and pay bills and afford medicine or a home is going to be taken away. It causes physical and emotional trauma which manifested in Plaintiff's life as nightmares and an increase in the frequency and intensity of his migraines. Defendant was motivated by an intent

to discriminate because of the pattern of conduct described in paragraph 32. Defendant's intentions can be discerned particularly by its act of arbitrarily taking away part of Plaintiff's accommodation and the failed attempt to forum shop the medical documentation through Defendant's examiner even though the medical documentation in the record was sufficient.

**Claim #3 Discrimination**

34. This claim arises from 42 U.S.C. §12112. As described previously in this complaint in paragraph 6, Plaintiff has a disability as defined by the ADA. The Plaintiff had informed the Defendant of his disability which had been acknowledged by Defendant. The flexible schedule portion of the accommodation had been effective since 2016 and did not pose an undue hardship on Defendant. Flexible schedules are offered to other employees without having to go through an interactive process. When Defendant arbitrarily took away Plaintiff's flexible schedule accommodation in the January 2022 accommodation summary, it failed to continue to provide a reasonable accommodation. (Isbell v. John Crane, Inc., 30 F.Supp.3d 725 (2014) and Rivera v. Altranais Home Care LLC, 2022 WL 16158). The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business (Snapp v. United Transp. Union, 889 F.3d 1088, 1095 9th Cir. 2018).

35. **Request for Relief.** 1) Equitable relief in the form of restoration of 160 hours of sick leave; Restoration of the flexible schedule portion of Plaintiff's accommodation; and Release of the requested records in an unaltered, original form. 2) $150,000 in non-economic pain and suffering damages are sought for the discrimination claim. 3) $1,650 in attorney's fees incurred through February 2022 associated with the interactive process and are not associated with this lawsuit. 4) Reimbursement of court fees and other reasonable costs associated with this lawsuit.

36. Plaintiff is not requesting a jury trial.

Date: January 26, 2023.                Sign Name: *[signature]*
                                        Print Name: Steven A. Santos

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF HUMBOLDT**

I am the pro se Plaintiff residing at 1224 S Street Eureka, California 95501. On January 26, 2023, I served the foregoing document described as **FIRST AMENDED COMPLAINT** in the manner described below on all interested parties in this action addressed as follows:

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

☑   **(BY ELECTRONIC SERVICE PROVIDER)** I am familiar with the practice for filing electronically. Through use of the Court's CM/ECF electronic filing system, I arranged a true and correct copy of the above-reference documents to be electronically served to the e-mail address(es) registered with the court this day in the ordinary course of business following ordinary business practices.

Executed on **January 26, 2023,** at Eureka, California

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



Steven A. Santos

FIRST AMENDED COMPLAINT　　　　　　　　　　CASE NO.: 1:22-cv-07485-RMI