Steven A. Santos
1224 S Street
Eureka CA 95501
(503)709-3450
santos@peak.org

Pro Se Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EUREKA DIVSION

Steven A. Santos

Plaintiff

vs.

County of Humboldt

Defendant

Case Number: 1:22-cv-07485-RMI

**OPPOSITION TO MOTION TO DISMISS**

Date: March 21, 2023
Time: 11:00 a.m.
Judge: Honorable Robert M. Allman

## FACTUAL BACKGROUND

Plaintiff is employed as a Senior Planner by the Defendant. FAC ¶4 and 5. Plaintiff has a qualifying disability under the ADA and notified Defendant of disability on August 8, 2016, and included a doctor's note that described a medical condition that is generally recognized as a disability. FAC, ¶6. In May 2017 Plaintiff was informed he will be moved out of his private office into a shared workspace. Plaintiff met with Defendant on June 9, 2017, and Defendant requested a doctor's note describing diagnosis, prognosis, and limitations. On or around July 12, 2017, the internal office shuffling is completed and Plaintiff's request to retain private office as an accommodation was granted. On July 24, 2017, Plaintiff provided Defendant with an

additional doctor's note describing diagnosis, prognosis, and limitations, as requested by Defendant. Also on July 24, 2017, Plaintiff asks Defendant if it needed anything further and explicitly expressed his interpretation of events as the retainment of the private office accommodation. Plaintiff did not receive a response from Defendant. On August 1, 2018, Defendant, communicated to Plaintiff's co-workers at a staff meeting that Plaintiff will be moved out of private office. Defendant later clarified that this will not occur. However, on August 21, 2018, Defendant, tells Plaintiff that he has no disability and that the previous decision to provide a private workspace "…had nothing to do with (Plaintiff's) accommodation request." Plaintiff wrote Defendant on August 21 and 22, 2018, seeking clarification but did not receive a response. On September 6, 2018, Plaintiff met with Defendant's Human Resources staff and is given a personal and a medical questionnaire. On October 4, 2018, Plaintiff provides personal questionnaire to Human Resources. Also on October 4, 2018, Plaintiff informed Human Resources that announcements to Plaintiff's co-workers that Plaintiff will be moved out of his office continue to be made at staff meetings. Plaintiff asks for assistance, but Defendant does not respond. On December 17, 2018, Defendant through its Planning and Building Department Director, informs Plaintiff of intent to immediately move Plaintiff into a shared space. Defendant's Director demanded Plaintiff immediately provide the medical questionnaire to him instead of Human Resources "to halt the move" even though the medical questionnaire was still under review by Plaintiff's representatives. Under the explicit threat of losing his accommodation, Plaintiff complied with Defendant's demand. On December 18, 2018, Plaintiff received a letter from Defendant's Human Resources requesting the medical questionnaire provided to Defendant's Director the previous day and Plaintiff responded with questions and requests but never received a response. On January 18, 2019, Plaintiff sends Human Resources the medical questionnaire appended with the July 24, 2017, doctor's note. Plaintiff does not hear from Defendant until Defendant tells employee on March 12, 2019, that once again employee is going to be moved into a shared space on March 26, 2019. Defendant tells plaintiff that he has no disability, that there has been no ADA process, and that there is no ADA process pending. On March 13, 2019, Plaintiff writes Human Resources asking for help but does not receive a

response. Defendant's Human Resources staff finally meets with Plaintiff on July 18, 2019, and reaffirms the provision of a private office and flexible schedule accommodation that had been in place since Plaintiff notified Defendant of his disability on August 8, 2016.

On February 5, 2021, Plaintiff was informed that he would be required to sit at the front counter even when customers were not present or in need of assistance. Plaintiff stated that this seating assignment was not consistent with his accommodation. Defendant once again told Plaintiff that he did not have a disability or an accommodation and would be required to request one. FAC, ¶7. Defendant then walked back and altered its position, acknowledging the existence of a disability and an accommodation in an April 8, 2021, letter to Plaintiff. Despite the acknowledgment, the medical questionnaire Defendant included with its April 8, 2021, letter was based on the premise that Defendant was unaware of Plaintiff's disability and needed to provide documentation to establish its existence. Additionally, the April 2021 medical questionnaire was less detailed than the medical questionnaire that Plaintiff had provided in January 2019 and re-asked questions that had previously been sufficiently answered by a qualified medical professional. Plaintiff repeatedly asked to meet with Defendant. Instead of meeting with Plaintiff, Defendant, through its hired agent, told Plaintiff he would be subject to a fitness for duty exam. FAC, ¶8.

Defendant met with Plaintiff on June 14, 2021, to justify its prior decision to subject Plaintiff to a fitness for duty exam after the fact. The meeting materials included alterations by Defendant to Plaintiff's previous medical assessment and suppressing documents from decision makers prepared by Plaintiff specifically for the meeting. FAC, ¶9. Defendant later admitted that the medical documentation provided in January 2019 was sufficient to make accommodation decisions further disclosing that Defendant was contemplating rejecting any new medical documentation from Plaintiff's doctor to justify the fitness for duty exam decision made in May 2021. FAC, ¶9.

On July 14, 2021, Plaintiff made various formal internal and external complaints and attempting to gather evidence by requesting documents. FAC, ¶10, 11, and 12. On July 26, 2021, Defendant responded to Plaintiff's protected activities by issuing a medical questionnaire the

differed substantially from the form provided on April 8, 2021 and included inappropriate questions. Defendant's correspondence accompanying the questionnaire contradicted statements made by Defendant during the June 14, 2021, meeting. Plaintiff objected to the questionnaire and defendant ignored the objections and failed to discuss or meet with the plaintiff. FAC, ¶13.

Plaintiff informed Defendant he was participating in an investigatory interview conducted by DFEH. Defendant responded by issuing a Notice of Directive to attend the disputed fitness for duty exam. Defendant ignored and didn't respond to multiple correspondences challenging the legal and factual basis of the Notice of Directive. FAC ¶14 through 17.

Plaintiff complied with the Directive out of fear of discipline. Defendant's examiner violated Plaintiff's medical privacy by asking questions that were not job related nor disability related. Defendant's examiner. Fac ¶18. Defendant, through its examiner, suggested that the Plaintiff take certain medications in violation of the relationship between Plaintiff and his doctors. Defendant did not provide its own examiner its questionnaire until after the examination. While Plaintiff did finally receive an unaltered copy of the examiner's November 2021 report as part of Plaintiff's initial disclosures, Defendant still hasn't provided Plaintiff a copy of the questionnaire it sent to its examiner.

Plaintiff informed Defendant of the invasion of privacy on December 7, 2021. Also on the date, Plaintiff asked Defendant to be informed in advance the nature and purpose of all future meetings. Defendant did not respond. ¶19.

Defendant met with Plaintiff on January 26, 2022 and conducted a detailed oriented interactive meeting without giving Plaintiff the opportunity to review documents or prepare and conducted the meeting even though Plaintiff was at home with Covid. ¶20. Plaintiff continued to request records which Defendant continued to ignore. ¶21.

## ARGUMENT

### A. SUFFICIENT FACTS EXIST SUPPORTING 1ST CLAIM OF RETALIATION

Defendant's MTD describes the three elements to a *prima* facie case of ADA retaliation. Defendant's MTD does not dispute that Plaintiff engaged in protected activities. Defendant argues that Plaintiff did not suffer any adverse action. Plaintiff alleges that he was subjected to

multiple adverse actions including being: 1) subjected to an illegal fitness for duty exam; 2) subjected to a predatory medical questionnaire; 3) subjected to an invasion of personal medical privacy; 4) subjected to the removal of the flexible schedule portion of his accommodation without due process. FAC, ¶27. Defendant's MTD argues that these actions by Defendant did not have an adverse effect on the "terms, conditions, or benefits of employment." The fitness for duty exam was illegal because Defendant had actual and sufficient knowledge of Plaintiff's disability and restrictions and there was no business necessity. FAC, ¶28. If Plaintiff had not complied with the Notice of Directive for the exam, even though it was illegal, he would have been subjected to discipline for insubordination. Per EEOC guidance, a fitness for duty exam can be considered retaliatory. FAC, ¶28. The medical questionnaire was predatory because it was based in part on a statement by Defendant's agent during the June 2021 meeting that was later proven untrue by Defendant's agent's own examiner. FAC, ¶29. Plaintiff is a public sector employee and the terms, conditions, or benefits of his employment include being free of unreasonable and unjustifiable invasions privacy which include illegal fitness for duty exams and being asked medical questions that are not job nor disability related or being directed by their employer or their agents to take certain medications. Defendant's MTD further argues that the removal of the flexible schedule does not rise to the level of adverse action. Loss of the flexible schedule is a substantive change to the terms, conditions, or benefits of benefits of employment. The flexible schedule accommodation was reasonable and did not present an undue burden as it had been in place since 2016 and other employees without disabilities continue to be given flexible schedules. FAC, ¶31. Employers subject to the ADA must implement a reasonable accommodation if it does not cause an undue burden.

The MTD argues that insufficient facts exist to demonstrate retaliatory animus. Defendant's argument rests primarily on the lack of temporal proximity between Plaintiff's original disability notification in August 2016 and the adverse actions taken in 2021 and 2022. Defendant's argument fails because Plaintiff continued to engage in a series of protected activities in 2021. FAC, ¶26. Plaintiff defended his accommodation in February 2021 and was then told he would be subject to a fitness for duty exam before any meetings took place. Within

two weeks of Plaintiff filing complaints and attempting to gather evidence by requesting records, Defendant issued a predatory medical questionnaire that substantially differed from the questionnaire just three months prior. Within a week of participating in an investigatory interview by DFEH, Defendant issued its Notice of Directive for the fitness for duty exam. There is more to the causality mosaic then just the temporal proximity of events. There is the Defendant's behavior throughout all the interactive process(es). Failure to meet, failure to respond, telling Plaintiff his accommodation was going to be taken away at least six times, altering records, not providing records, not giving Plaintiff time to prepare for meetings, gaslighting Plaintiff by saying multiple times he has no disability. FAC, ¶32 and the extended chronology starting on Page 1 of this Opposition. Additionally, when Plaintiff met with Defendant on September 13, 2022, to give Defendant the opportunity to correct the accommodation summary to include the flexible schedule, Defendant told Plaintiff he would be subjected to another medical exam if he attempted to defend his flexible schedule accommodation even though Plaintiff discussed his flexible schedule with Defendant's examiner in November of 2021.

Accordingly, Defendant's request to dismiss Plaintiff's first claim for retaliation should be denied. Alternatively, if deficiencies are present in the complaint, since Plaintiff is pro se, he should be given leave to amend.

**B. SUFFICIENT FACTS EXIST SUPPORTING 2nd CLAIM OF INTERFERENCE**

Defendant's MTD does not dispute that Plaintiff engaged in protected activities. Defendant argues that Plaintiff failed to state facts showing that Defendant coerced, threatened, intimidated, or interfered. Defendant further argues that Plaintiff failed to state facts showing Defendant was motivated by an intent to discriminate.

Defendant first response to Plaintiff defending his accommodation in February 2021 was to tell him he had no disability nor accommodation. FAC, ¶7. That was an act of intimidation and interference with intent to discriminate. Defendant then, before even meeting with Plaintiff, decided to toss out sufficient medical documentation it had previously accepted and demand a

fitness for duty exam. FAC, ¶8. This was a threat and an act of intimidation. Defendant carried out this threat and in doing so also invaded Plaintiff's medical privacy, which was another act of intimidation. FAC, ¶18 and 19. Defendant denying access to records relevant to effective participation in the interactive process was an act of interference. FAC, ¶10. Defendant demanding his medical documentation while it was under review by Plaintiff in December 2018 under the penalty of having office taken away was a threat, was coercive, and was intent to discriminate. Defendant failing to respond to substantive requests and correspondences from Plaintiff were acts of interference in what should have been a good faith process. The pattern of failing to follow up and respond to Plaintiff date back to 2017. Defendant not giving Plaintiff enough time to prepare for the January 2022 interactive meeting and conducting it after being informed Plaintiff was home with Covid was an act of interference and bad faith.

The same behavior and conduct by Defendant that showed retaliatory animus also demonstrate discriminatory intent. FAC, ¶32. Defendant's failure to continue to provide the reasonable accommodation of a flexible schedule was itself an act of discrimination and this action also demonstrates intent.

Accordingly, Defendant's request to dismiss Plaintiff's second claim for interference should be denied. Alternatively, if deficiencies are present in the complaint, since Plaintiff is pro se, he should be given leave to amend.

**C. SUFFICIENT FACTS EXIST SUPPORTING 3rd CLAIM OF DISCRIMINATION**

Defendant's MTD argues that Plaintiff did not state a *prima facie* claim of discrimination because the FAC failed to allege that "1) he is disabled within the meaning of the ADA; 2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and 3) he suffered an adverse action because of his disability." Firstly, Plaintiff plead sufficient facts that his is disabled. FAC, ¶34 incorporating be reference FAC, ¶6. Secondly, Plaintiff is a qualified individual able to perform the essential functions of the job with reasonable accommodations because he has been employed by Defendant for 16 years and has served as a Senior Planner for over five years with an accommodation. FAC, ¶4 and 6. Thirdly, Defendant applies the incorrect legal standard. Per the Model Civil Jury Instructions for the 9th

Circuit, section 12.7 ADA – Reasonable Accommodation, in addition to demonstrating he is disabled and able to perform the essential function of the job, Plaintiff must only also show that Defendant received adequate notice of the disability and desire for accommodation. Plaintiff provided Defendant notice multiple times throughout the interactive process(es). FAC, ¶6, 7, and 8. The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a qualified individual, the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. Snapp v. United Transp. Union, 889 F.3d 1088, 1095 (9th Cir. 2018). The flexible schedule was not an undue burden on Defendant as it had been provided for several years and is continued to be provided to other employees without disabilities. The failure to continue to provide a reasonable accommodation was an act of discrimination. FAC, ¶34. When Defendant arbitrarily took away Plaintiff's flexible schedule accommodation in the January 2022 accommodation summary, it failed to continue to provide a reasonable accommodation. (Isbell v. John Crane, Inc., 30 F.Supp.3d 725 (2014) and Rivera v. Altranais Home Care LLC, 2022 WL 16158). FAC, ¶34. Defendant's cancelation of the flexible schedule accommodation was done without notice or due process and without Defendant demonstrating that it was an undue burden or exploring alternatives. Plaintiff gave Defendant the opportunity to amend the accommodation summary to include a flexible schedule and Defendant responded by threatening Plaintiff with another medical exam.

Accordingly, Defendant's request to dismiss Plaintiff's third claim for discrimination should be denied. Alternatively, if deficiencies are present in the complaint, since Plaintiff is pro se, he should be given leave to amend.

**D. ATTORNEY'S FEES SHOULD BE ALLOWED**

Plaintiff's request for attorney's fees is based on the argument that they are direct economic losses that would not have occurred but for Defendant's misconduct. The attorney's fees were incurred specifically related to Plaintiff's attempt to obtain records for which he was entitled that Defendant wrongly withheld and for assistance with a subsequent investigation by the DFEH. If the categorization of these economic damages as attorney's fees is in error, Plaintiff should be given leave to amend and recategorize these losses as other eligible damages.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied. Alternatively, if additional clarification is needed due to Plaintiff's pro se status, then leave to amend the complaint further should be granted. Additionally, Plaintiff has a good faith belief that additional records relevant to the case exist that were not included in the initial disclosures and therefore the case should be allowed to proceed so additional discovery can be performed.

Date: March 6, 2023.

Sign Name:
Print Name: Steven A. Santos