UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| STEVEN A. SANTOS,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>    Defendant. | Case No. 22-cv-07485-RMI<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 12 |

Now pending before the court is Defendant's Motion (dkt. 12) seeking dismissal of Plaintiff's First Amended Complaint ("FAC"). Plaintiff has responded (dkt. 17) and Defendant has replied (dkt. 18); the Motion is therefore ripe for decision. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons stated below, Defendant's motion is granted, but Plaintiff shall have one more opportunity to file an amended pleading if he so wishes.

**LEGAL STANDARDS**

The currently-pending motion to dismiss (dkt. 12), filed under Fed. R. Civ. P. 12(b)(6), challenges the sufficiency of the allegations set forth in the FAC. In reviewing the sufficiency of a complaint, before the presentation of any evidence either by affidavit or admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail, instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory," or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri*

*v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In evaluating such motions, courts must: (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and therefore courts must not "assume that the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

To survive dismissal under these standards, while complaints do not necessarily need to be hyper-detailed, they do need to contain enough relevant factual allegations such as to establish the grounds of a plaintiff's entitlement to relief – and, doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Under these standards, courts follow a "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements; and, (2) only a complaint that states a *plausible* claim for relief survives a motion to dismiss. Plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense; however, where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint may have alleged, but it has failed to "show,"

"that the pleader is entitled to relief" as required by Fed. Rule Civ. Proc. 8(a)(2). *See generally Iqbal*, 556 U.S. at 678-79.

In light of these principles, a court considering a motion to dismiss can choose to begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact contain well-pleaded and factual allegations, courts will assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

As to the nature of dismissals, leave to amend should be granted unless it becomes clear that amendment would be futile because further amendments cannot remedy the defects in the complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

On November 28, 2022, Plaintiff filed his Original Complaint (dkt. 1) through which he advanced two claims against his employer, a department of Humboldt County, California. Plaintiff is employed as a Senior Planner by the County's Planning and Building Department. *Id* at 2. The first claim alleged retaliation in response to the following: (1) that Plaintiff asked that his accommodation be requested under provisions of the Americans with Disabilities Act of 1990 ("ADA")) (42 U.S.C. ch. 126 § 12101 *et seq*); (2) that he made a complaint to the Equal Employment Opportunity Commission ("EEOC"); (3) that he expressed opposition regarding the content of a certain medical questionnaire; and, (5) that he attempted to gather evidence by

3

requesting certain records. *Id*. at 6-7. He then alleged that the retaliation was manifest in: (1) being subjected to "an illegal" fitness for duty exam; (2) being subjected to a "predatory" medical questionnaire; (3) being subjected to "an invasion of personal medical privacy"; (4) being reportedly told "that he did not have a disability or accommodation while having protected status"; and, (5) being "subjected to the removal of the flexible schedule portion of his accommodation without due process." *Id*. at 7. The second claim alleged that "Defendant intentionally interfered with [P]laintiff's exercise of rights under the ADA" when Defendant reportedly withheld certain documents, to which Plaintiff believes he was entitled, while failing to provide him with "adequate notice or opportunity to prepare and participate in interactive meetings." *Id*. Shortly thereafter, Defendant filed a Motion (dkt. 8) seeking dismissal. In lieu of responding, Plaintiff filed an Amended Complaint ("FAC") (dkt. 11), which was followed shortly thereafter by Defendant's second Motion (dkt. 12) seeking dismissal.

The Original Complaint was very shy on factual allegations and loaded with argumentative and conclusory statements; unfortunately, the FAC has fared no better. The FAC pleads retaliation[1], discrimination[2], and interference[3] under the ADA – all of which are attended with the

---

[1] To present a *prima facie* case for ADA retaliation, a plaintiff must show that (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and, that (3) there exists a causal connection between the protected activity and the adverse employment action. 42 U.S.C. § 12132; *see also Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003). Adverse employment actions are defined broadly and not limited to such actions as discharges, transfers, or demotions. *See Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Because a failure to accommodate is a separate cause of action under the ADA, *see* 42 U.S.C. § 12112(b)(5)(A), it cannot be viewed as an adverse employment action for other purposes. In other words, since an adverse employment action is an element of a *prima facie* failure-to-accommodate claim in the Ninth Circuit, *see Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003), it would defy logic to view an employer's failure to accommodate as an adverse employment action because doing so would render the entire failure-to-accommodate cause of action into an element of itself.

[2] To state a *prima facie* case of ADA discrimination, Plaintiff must show (1) that he is a disabled person within the meaning of the ADA; (2) that he was able to perform the essential functions of the job, with or without reasonable accommodation; and, (3) that he suffered an adverse employment action because of his disability — meaning that his disability was a motivating factor behind the discrimination. *See Allen*, 348 F.3d at 1114; *see also Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) (holding that "a motivating factor standard is the appropriate standard for causation in the ADA context.").

[3] The ADA prohibits interference with a person who has asserted his or her rights under the ADA. *See* 42 U.S.C. § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in

1   aforementioned pleading standards (*see* n.1, n.2, and n.3 *supra*). *See* FAC (dkt. 11) at 7-13.
2   However, once the argumentative statements, the conclusory assertions, and the irrelevant matter
3   is stripped away, only the following *relevant* factual allegations remain. Plaintiff has alleged (FAC
4   at ¶ 6) that he suffers from chronic migraines that interfere with his ability to work. He has also
5   alleged (*id.*) that, in 2019, his employer accepted his then-current documentation of this condition
6   and permitted him to remain in a private office and allowed him to work a schedule involving
7   flexible hours (without further describing the nature of that flexibility, or why he found it
8   beneficial in light of his headaches, or to what extent he would be prejudiced without that
9   flexibility). Plaintiff's FAC then alleged (*id*. at ¶ 7) that in February of 2021, he was told that "he
10  would have to sit at the front counter even when customers were not present or in need of
11  assistance," and added that he does not mind doing so when customers are present and need
12  assistance, but that he "objected to being subjected to physical stimuli that aggravates his medical
13  condition when there were no customers."

14  The FAC also alleged (*id*. at ¶¶ 8-20) he was made to engage the interactive process with
15  his employer again in 2021 and noted various aspects of his displeasure with how his employer
16  conducted the interactive process.[4] He added (*id*. at ¶ 21) that, at the conclusion of what he
17  suggested was a second round of the interactive process, his employer "took away [his] flexible
18  schedule accommodation," however, he provided no details about the upshot of that event – in
19  other words, Plaintiff never described his previous schedule, the ensuing "flexible" schedule, or
20  the effect of either on his headaches. He has not described the nature, frequency, or duration of his
21  headaches, nor has he described the essential functions of his job, nor has he explained how can,

---

the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."). In the Ninth Circuit, a plaintiff must demonstrate – and therefore must properly allege – that he or she has suffered a "distinct and palpable injury" as a result of the interference. *See Brown*, 336 F.3d at 1193. "That injury could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Id*.

[4] "The interactive process is at the heart of the ADA's process and essential to accomplishing its goals. It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an 'undue burden' on employers." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir. 2000).

1   or cannot, perform those functions with or without accommodations in light of his headaches.

2   As to his retaliation claim, Plaintiff alleged (*id*. at ¶ 26) the following protected activities:

3   asking for ADA accommodations; complaining to the County's human resources office under the

4   Department's Equal Employment Opportunity ("EEO") policy; and, complaining about the

5   County to the EEOC. By way of adverse employment actions, Plaintiff's retaliation claim is

6   woefully defective in that it failed to allege any *employment* actions that might be adverse –

7   instead, Plaintiff only takes issue with the various facets of the interactive process itself and with

8   the accommodations themselves. In this regard, he only alleged (*id*. at ¶27) the supposedly

9   following adverse employment actions: being "subjected to an illegal fitness for duty exam";

10  being "subjected to a predatory medical questionnaire"; being "subjected to an invasion of

11  personal privacy"; and, being "subjected to the removal of the flexible schedule portion of his

12  accommodation without due process." Stripping away Plaintiff's hyperbole, his argumentation,

13  and conclusory terms such as "illegal" and "predatory," and also discounting his complaint about

14  his privacy interest (which he himself placed at issue when asking for a special workplace

15  accommodation based on his averred medical issue)[5], all that remains is his dissatisfaction with

16  the interactive process during which the employer is entitled to meet with the employee, seek

17  information from himself and his health care providers about his alleged work limitations, as well

18  as subjecting him to a fitness for duty examination. *See* 42 U.S.C. § 12112, subd. (d)(4)(A); 29

19  C.F.R. § 1630.14, subd. (c). Accordingly, these are not allegations of adverse *employment* actions.

20  As stated above, adverse employment actions are actions in the nature of "termination,

---

[5] Multiple courts have held that the right to privacy of medical records is waived when the plaintiff's medical condition is placed "at issue" in a lawsuit or other matter. *See EEOC v. The Cheesecake Factory, Inc.*, No. C16-1942JLR, 2017 U.S. Dist. LEXIS 144391, at *19-20 (W.D. Wash. Sep. 6, 2017), *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997); *Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996); *Larson v. Bailiff*, No. 13cv2790 BAS(JLB), 2015 U.S. Dist. LEXIS 94188, 2015 WL 4425660, at *5 (S.D. Cal. July 17, 2015) (ruling that by placing his physical health at issue, the plaintiff waived any privacy right in his medical records); *Frye v. Ayers*, No. CIVS990628LKKKJM, 2009 U.S. Dist. LEXIS 124339, 2009 WL 1312924, at *2 (E.D. Cal. May 12, 2009) ("By making these claims [which placed his medical condition at issue], petitioner waived his privacy rights in his medical records."); *Barnes v. Glennon*, No. 9:05-CV-0153 (LEK/RFT), 2006 U.S. Dist. LEXIS 101806, 2006 WL 2811821, at *4 (N.D.N.Y. Sept. 28, 2006) (ruling that the release of the plaintiff's medical records "did not violate Plaintiff's constitutional right to privacy since medical conditions were at the heart of the argument presented by Plaintiff in his habeas corpus petition"); *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112-13 (E.D. Pa. 1987) ("[W]hen a party places his or her physical or mental condition in issue, the privacy right is waived").

dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks*, 229 F.3d at 928. As it relates to the averment that his flexible work schedule accommodation was allegedly clawed back – again, as stated above – because the failure to accommodate is a separate cause of action under the ADA, *see* 42 U.S.C. § 12112(b)(5)(A), it cannot be viewed as an adverse employment action for other purposes such as ADA retaliation or ADA discrimination claims.

Neither has Plaintiff properly alleged (*see id*. at ¶ 32) any causal connection between what he improperly contended to be adverse employment actions, and his averred protected activities. Once again, after his explanations are stripped of their argumentative, hyperbolic, and conclusory content – all that remains is the reiteration of the various facets of his dissatisfaction with the interactive process itself. Plaintiff should remember that the interactive process – indeed the central goal of the ADA itself – is geared towards striking a balance that "allow[s] disabled employees to continue working *without placing an 'undue burden' on employers*." *Barnett*, 228 F.3d at 1113 (emphasis added). At bottom, as to his retaliation claim, Plaintiff's FAC has failed to allege any adverse *employment* action, as well as failing to allege any causal connection between the protected activities averred and any adverse employment action. He has therefore failed to state a claim for retaliation under the ADA. Accordingly, although it appears unlikely that Plaintiff will be able to save this claim by amendment, Claim-1 (Retaliation) is **DISMISSED without prejudice**, and Plaintiff shall have one final opportunity to amend, if he so chooses, in light of the guidance provided herein.

Claim-2 (Interference) is equally ill-fated. In pleading ADA interference, Plaintiff's FAC (*id*. at ¶ 33) is replete with conclusory assertions, legal argument, as well as threadbare recitals of the elements of the claim. Once those are stripped away, the only allegations that remain are, once again, expressions of Plaintiff's dissatisfaction with the interactive process itself. Plaintiff alleges that he was "coerced, threatened, intimidated, or interfered [with] on the account of his protected activities" by being subjected to "repeated threats of a fitness for duty exam even though the medical documentation in the record was [in Plaintiff's opinion] sufficient and the [supposed] intimidation of being asked medical questions that were not [in Plaintiff's estimation] disability

7

1    related or job related [and that these] are examples of unlawful conduct prohibited in 42 U.S.C.
2    12203(b)." *See id.*

3          The Ninth Circuit, in *Brown*, 336 F.3d at 1191, explained that evaluation of interference
4    claims under the ADA should draw on case law interpreting and applying the anti-interference
5    provision of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, which uses language identical to
6    section 12203(b). As *Brown* put it, "it is clear that, given the broad remedial purpose of the ADA[6],
7    the plain language . . . clearly prohibits a supervisor from threatening an individual with *transfer,*
8    *demotion, or forced retirement* unless the individual foregoes a statutorily protected
9    accommodation . . . [and] [w]e emphasize that conclusory allegations – without more – are
10   insufficient to state a violation . . . [thus] [a]n ADA plaintiff must also demonstrate that she has
11   suffered a "distinct and palpable injury" as a result of the threat [such as] either the giving up of
12   her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from
13   the threat itself." *Brown*, 336 F.3d at 1192-93 (internal quotations and citations omitted) (emphasis
14   supplied). It is therefore clear from *Brown*, that the sort of coercion, intimidation, threats, or
15   interference contemplated in § 12203(b) are largely similar to the adverse employment actions
16   requirement applied to ADA retaliation and discrimination claims. Instead, Plaintiff's FAC has
17   only reiterated his dissatisfaction with the interactive process again by complaining of "repeated
18   threats of a fitness for duty exam" (*see* FAC at ¶ 33). Further, instead of pleading a "distinct and
19   palpable injury" as contemplated by *Brown*, Plaintiff merely complains, again, that his flexible
20   work schedule accommodation was taken away, but that is not the sort of palpable injury
21   contemplated by § 12203(b). In these regards, as to all three of his claims, the FAC is attempting
22   to force the proverbial square peg into a round hole. Accordingly, despite the fact that it appears
23   equally unlikely that this claim can be saved by amendment, Claim-2 (Interference) is
24   **DISMISSED without prejudice**, and Plaintiff shall have one final opportunity to amend, if he so
25   chooses, in light of the guidance provided herein.

26         By the same token, Claim-3 fares no better. Here, Plaintiff has pleaded discrimination

---

[6] *See* 42 U.S.C. § 12101(b)(1) ("It is the purpose of this chapter to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.").

1  under the ADA which, as explained above, requires factual allegations to the effect that: (1) he is a
2  disabled person within the meaning of the ADA; (2) that he was able to perform the essential
3  functions of the job, with or without reasonable accommodation; (3) that he suffered an adverse
4  employment action because of his disability — meaning that his disability was a motivating factor
5  behind the discrimination. In this regard, the FAC has only really alleged competent facts under
6  the first element – that Plaintiff suffered from migraine headaches and that it affected his ability to
7  work (even in that regard, he has provided nothing more than a bald assertion that he has chronic
8  headaches, and they interfere with his ability to work, nothing more by way of detail was pleaded).
9  As was the case with his retaliation claim, Plaintiff has failed to allege that he suffered any adverse
10 *employment* action, instead, he has only (repeatedly) expressed dissatisfaction with the interactive
11 process, or with the quanta of accommodations provided. Nor has he drawn any connection
12 between his disability and any adverse employment action. Thus, despite the fact that it once again
13 appears unlikely that this claim can be saved by amendment, Claim-3 (Discrimination) is
14 **DISMISSED without prejudice**, and Plaintiff shall have one final opportunity to amend, if he so
15 chooses, in light of the guidance provided herein.
16    Lastly, Plaintiff also seeks $1,650 in attorney's fees he claims to have incurred through
17 February 2022, "associated with the interactive process and [which] are not associated with this
18 lawsuit." FAC at 13. It is unclear if Plaintiff's fee request is related to work that he undertook
19 himself in a *pro se* capacity, or if it is related to fees he incurred through an attorney he hired to
20 help him navigate the interactive process. To the extent that Plaintiff seeks attorneys' fees for
21 work he has done himself, it is well settled law that *pro se* litigants may not recover attorney's fees
22 (*see Kay v. Ehrler*, 499 U.S. 432, 436-37 (1991); therefore, the Court **STRIKES** Plaintiff's
23 request for attorney's fees because Plaintiff does not have an attorney.
24 //
25 //
26 //
27 //
28 //

**CONCLUSION**

For the reasons stated herein, Defendant's Motion (dkt. 12) is **GRANTED**, and Plaintiff's FAC is **DISMISSED without prejudice**. If Plaintiff wishes to file a Second Amended Complaint, he must do so within 30 days from the date of this order. Failure to file an amendment within that timeframe will result in a dismissal of the entire action with prejudice and entry of judgment. Plaintiff is admonished that this will be his final opportunity to amend. Therefore, if Plaintiff elects to file another pleading, he must take care to implement the instructions and guidance provided herein.

**IT IS SO ORDERED.**

Dated: March 21, 2023

ROBERT M. ILLMAN
United States Magistrate Judge