UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| STEVEN A. SANTOS,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>    Defendant. | Case No. 22-cv-07485-RMI<br><br>**ORDER RE: MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

Now pending before the court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (dkt. 26). Plaintiff has responded (dkt. 27) and Defendant has filed a reply (dkt. 28). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil L.R. 7-1(b), the court finds that the matter is suitable for disposition on the papers, and that oral argument would not aid the decisional process. For the reasons stated below, Defendant's Motion is granted.

**PROCEDURAL HISTORY**

Proceeding *pro se*, Plaintiff filed an original complaint in November of 2022 (dkt. 1) which was followed by Defendant's first dismissal motion (dkt. 8). In lieu of responding, Plaintiff filed an amended complaint (dkt. 11). Defendant once again moved to dismiss (dkt. 12), and after a full round of briefing (*see* dkts. 17, 18), the court granted Defendant's motion and gave Plaintiff leave to file a another amended complaint consistent with the instructions and guidance that the court provided therein (*see* dkt. 20). Thereafter, Plaintiff filed the now-pending Second Amended Complaint ("SAC") (dkt. 25), and Defendant once again moved to dismiss (dkt. 26).

//

//

**FACTUAL BACKGROUND**

Like the previous iterations, the SAC is dominated by legal arguments couched as factual statements, conclusory assertions, generalized background information about migraines (which are untethered from the allegations at the heart of this case), and a number of inflammatory statements that are not relevant – with that material excised, the following is a recitation of the SAC's pertinent factual allegations.

Plaintiff has been diagnosed with chronic migraines; he notified Defendant of this medical condition and his request for accommodations in 2016. *See* SAC (dkt. 25) at 3-4. His migraine headaches involve a frequency that ranges from daily to semi-monthly. *Id*. at 2. At the present time, Plaintiff "experiences migraines approximately two to three times a week." *Id*. As a Senior Planner for Humboldt County, and by his own account, Plaintiff's job duties include: (1) "interacting with the public"; (2) "researching a wide array of policies and land use regulations"; (3) "reviewing and generating technical documents such as staff report[s],"; and, (4) "conducting public presentations." *Id*. at 3. Plaintiff alleges that the "[p]erformance of these duties is impossible while experiencing an acute migraine." *Id*. at 3.

To balance the performance of these duties while managing the effects of his migraine headaches, Plaintiff alleges that he needs private office space and a flexible work schedule as an accommodation under provisions of the Americans with Disabilities Act of 1990 ("ADA")) (42 U.S.C. ch. 126 § 12101 *et seq*). *Id*. He suggests that a private office would allow him "to manage and exercise control over his immediate physical work environment, particularly for light, sound, and smell," which he contends allows him "to sometimes avoid migraine attacks." *Id*. Plaintiff adds that the ability to control his physical environment in this manner (*i.e.*, by having a private office) would allow him to perform his duties during the lead-up to a migraine attack or during its aftermath as well as allow him "to continue to perform duties during mild and sometimes during moderate attacks." *Id*.[1]

---

[1] These allegations seem implausible. Two out of the four essential job functions described by the SAC (*i.e.*, interacting with the public, and giving public presentations) are such that would be unaffected by him being given access to a private office. In other words, the desired accommodation (controlling the environment for light, sound, and smell) appears to be fundamentally at odds with the essential job function – that is, public

2

Plaintiff and Defendant have engaged in a lengthy interactive process which included a fitness for duty exam. *Id*. at 4-5. In 2017, upon Defendant's request, Plaintiff provided a doctor's note describing his then-current diagnosis, prognosis, and restrictions. *Id*. at 4. In 2018, upon Defendant's request, Plaintiff was asked to complete personal and medical questionnaires – which were completed and submitted to Defendant in late 2018 and early 2019. *Id*.

Given the public-facing element of his job description ("interacting with the public") (*see id*. at ¶7), Plaintiff was told in February of 2021 that he would need to sit at the front counter. *Id*. at 4. While "Plaintiff did not object to assisting customers . . . in person," he did object "to being subjected to physical stimuli that aggravates his medical condition when there were no customers and [there was] no business necessity [for him to sit at the front counter]." *Id*. In April of 2021, in response to his objections to his seating assignment, Plaintiff was asked to complete another medical questionnaire regarding his condition and asserted need for an accommodation. *Id*. at 5. Plaintiff then objected to submitting further documentation on grounds that he had already provided sufficient documentation and that an accommodation had already been granted. *Id*. The following month, in May of 2021, Plaintiff was referred for a fitness for duty examination. *Id*.

In July of 2021, Plaintiff "requested copies of all records that relate to his ADA status," following which, he took issue with Defendant's responsive production. *Id*. at 6. That same month, Plaintiff lodged complaints with Defendant (through its human resources department) and with the Equal Employment Opportunity Commission ("EEOC"). *Id*. Later that month, Plaintiff was asked to complete another medical questionnaire. *Id*. Once again, he objected to the medical questionnaire, and now alleges that "Defendant did not meet with Plaintiff or respond to his objections." *Id*. A few weeks later, Plaintiff notified Defendant that he was scheduled to be interviewed by the California Department of Fair Employment and Housing ("DFEH") as part of the DFEH's investigation of Plaintiff's complaint; the interview took place on October 28, 2021. *Id*. at 7.

The following month, on November 2, 2021, Plaintiff received another notification from

---

interaction, and public presentations.

3

1  Defendant "requiring him to submit to a fitness for duty exam" – Plaintiff asserts that this fitness
2  exam was based on the premise that his seating assignment at the front counter was a business
3  necessity, that he had submitted insufficient medical documentation, and that his doctor was not
4  qualified. *Id*. Through a union representative, Plaintiff sent Defendant certain correspondence that
5  voiced his disagreement with the asserted basis for Defendant's request for the latest fitness for
6  duty examination; once again, Plaintiff alleges that he never received any response. *Id*.
7  Nevertheless, in November of 2021, Plaintiff attended the fitness for duty examination which he
8  asserts was unduly intrusive in that he was asked "to disclose every aspect of his health and
9  history such as every surgery and medication and vaccination." *Id*. The following month, Plaintiff
10 sent Defendant a letter through which he suggested that the fitness for duty examination
11 constituted an invasion of his medical privacy. *Id*. On January 26, 2022, Defendant's
12 representative met with Plaintiff regarding the report stemming from the fitness for duty
13 examination. *Id*. at 8. Plaintiff complains that he only received a copy of the report 30 minutes
14 before that meeting – leaving him little time to prepare for the meeting. *Id*. A few days later, on
15 January 31, 2022, Plaintiff was sent a summary of the events that transpired at the January 26th
16 meeting; the summary included a description of Plaintiff's accommodation but did not include any
17 reference to the modified or flexible work schedule that Plaintiff wanted and apparently had (and
18 appears to continue to have). *Id*. Plaintiff continued to demand additional documentation – such as
19 any underlying document that Defendant had sent to the examiner that conducted Plaintiff's
20 fitness for duty examination – but was rebuffed. *Id*. Plaintiff again complained to Defendant about
21 what he perceived to be defects in Defendant's ADA process – and, as was the case before, his
22 complaints gained no traction. *Id*.

23 Two months later, on March 22, 2022, Plaintiff received a reprimand for "failing to follow
24 an instruction to post projects in a tracking software system." *Id*. Following a challenge to that
25 reprimand, and upon a finding that the reprimand was unwarranted or unsubstantiated, Defendant
26 was directed by an administrative review panel to rescind the reprimand and to remove references
27 thereto from Plaintiff's personnel file. *Id*. at 8-9. Plaintiff alleges that Defendant has still not
28 expunged the reprimand and grievance from Plaintiff's personnel file – however, that allegation

4

1  appears to be conclusory in that Plaintiff has not alleged any facts that would indicate why he
2  believes the expungement was never effectuated. *Id*. at 9. Notwithstanding the fact that Plaintiff
3  conceded that, following his fitness for duty examination, the examiner did not find that any sort
4  of modified or flexible work schedule was warranted (*see id*. at ¶ 24), in August of 2022, Plaintiff
5  complained to Defendant that his modified schedule accommodation was "missing" from a
6  summary of the meeting he attended after the fitness for duty exam. *Id*. Plaintiff then alleges that
7  when he met with a supervisor to clarify this discrepancy, he was reportedly told any further
8  discussion of the modified schedule as an accommodation would be met unfavorably and that it
9  would be better for Plaintiff to submit annual requests to his department director (a matter alleged
10 to be within the discretion of that individual and outside of the ADA framework). *Id*. Plaintiff
11 alleges that he was told that he would be subjected to another fitness for duty examination if he
12 persisted in his demand for a modified schedule accommodation, notwithstanding the fact that he
13 reportedly discussed his modified schedule demand with the fitness for duty examiner in
14 November of 2021. *Id*. In the second half of 2022, the state and federal agencies through which
15 Plaintiff had complained about Defendant's actions closed those files and issued Plaintiff right to
16 sue letters. *Id*. at 10.

17 Plaintiff alleges that he "continues to experience constant fear and anxiety that his
18 accommodation and ability to work will be taken away arbitrarily at any time" (which, of course,
19 indicates that he currently has the accommodation); that his "fear and anxiety include being
20 subjected to additional capricious and invasive medical inquiry or other arbitrary employment
21 actions if he attempts to defend or exercise his rights in the future" and that his "fear and anxiety
22 [have] resulted in [] stress that exacerbates Plaintiff's medical condition [] and continues to cause
23 significant physical pain, sleep loss, emotional distress, trauma, missed work, and disruption to
24 life activities." *Id*. at 9-10. Plaintiff alleges that he has informed Defendant on several occasions
25 that the conduct outlined herein has caused the pain and suffering described above but complains
26 that Defendant has not responded or discussed these concerns with Plaintiff. *Id*.
27 //
28 //

**LEGAL STANDARDS**

The currently-pending motion to dismiss (*see* dkt. 26 at 1-2), filed under Fed. R. Civ. P. 12(b)(6), challenges the sufficiency of the allegations set forth in the FAC. In reviewing the sufficiency of a complaint, before the presentation of any evidence either by affidavit or admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail, instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory," or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In evaluating such motions, courts must: (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and therefore courts must not "assume that the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

To survive dismissal under these standards, while complaints do not necessarily need to be hyper-detailed, they do need to contain enough relevant factual allegations such as to establish the grounds of a plaintiff's entitlement to relief – and, doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Under these standards, courts follow a "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements; and, (2) only a complaint that states a *plausible* claim for relief survives a motion to dismiss. Plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense; however, where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct that the complaint may have alleged, but failed to show that the pleader is entitled to relief as required by Fed. Rule Civ. P. 8(a)(2), plausibility is not established. *See generally Iqbal*, 556 U.S. at 678-79.

In light of these principles, a court considering a motion to dismiss can choose to begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact contain well-pleaded and factual allegations, courts will assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

As to the nature of dismissals, leave to amend should be granted unless it becomes clear that amendment would be futile because further amendments cannot remedy the defects in the complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

7

**DISCUSSION**

In its current iteration, Plaintiff's operative complaint claims: that Defendant failed to provide him a reasonable accommodation under the ADA; that Defendant retaliated against him for having requested relief under the ADA; and, that Defendant interfered with Plaintiff's exercise of rights under the ADA. *See* SAC (dkt. 25) at 10-23. The court will discuss each of Plaintiff's three claims – with a view to the standards set forth above – in turn. At the outset, however, it should be noted that despite being previously made aware that the allegations in his First Amended Complaint ("FAC") (dkt. 11) failed to state claims for ADA discrimination, retaliation, and interference (*see* Order of Dismissal, dkt. 20), and despite being provided guidance as to how to remedy such defects (*see id*. at 3-9), Plaintiff's operative complaint (dkt. 25) still suffers from all the same defects.

Plaintiff appears to have replaced his previously-pleaded ADA discrimination claim (*see* FAC, dkt. 11 at 13) with a failure to accommodate claim (*see* SAC, dkt. 20 at 10-12). However, as far as pleading standards are concerned, that is a distinction without a difference because "[t]he ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a qualified individual, the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)) (internal quotations omitted). In short, a *prima facie* claim for failure to accommodate has the same elements as other theories of ADA discrimination. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). To state a *prima facie* case of ADA discrimination, Plaintiff must show (1) that he is a disabled person within the meaning of the ADA; (2) that he was able to perform the essential functions of the job, with or without reasonable accommodation; and, (3) that he suffered an adverse employment action because of his disability — meaning that his disability was a motivating factor behind the discrimination. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) (holding that "a motivating factor standard is the appropriate standard for causation in the ADA context."). Further, "an employer has a mandatory obligation to engage in an interactive process with employees in order

1    to identify and implement appropriate reasonable accommodations." *Anthony v. Trax Int'l Corp.*,
2    955 F.3d 1123, 1134 (9th Cir. 2020). While an employer is not required to provide a particular
3    accommodation requested by an employee, it still must offer a reasonable accommodation.
4    *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

5          Previously, Plaintiff's ADA discrimination claim was dismissed with leave to amend
6    because he had only really alleged facts under the first element (that is, that he suffered from
7    migraine headaches which affected his ability to work), while failing to properly allege that he was
8    able to perform the essential functions of the job, with or without reasonable accommodation, and
9    that he had suffered an adverse employment action *because of* his disability — meaning that his
10   disability was a motivating factor behind the discrimination. *See* Order of Dismissal (dkt. 20) at 8-
11   9. The current iteration of Plaintiff's claim (failure to accommodate by allotting him a private
12   office and a flexible work schedule) fares no better. First, Plaintiff appears to concede that he does
13   have a private office that he can use – at least some of the time. *See* SAC (dkt. 25) ¶ 8; *see also*
14   Pl.'s Opp. (dkt. 27) at 3-4 (focusing only on the flexible schedule and not addressing Defendant's
15   contention that FAC ¶ 8 indicates that Plaintiff does indeed have a private office). Also, while
16   Plaintiff complained that he was informed that he would need to sit at the front counter to interact
17   with customers, he did not actually complain that he has ever actually sat there. Second, Plaintiff
18   appears to complain more so that his flexible schedule accommodation was missing from a
19   meeting summary rather to complain that he has not in fact been afforded a flexible work schedule
20   – indeed, it appears that he concedes that he does have a flexible work schedule. *See* SAC (dkt.
21   25) ¶¶ 8, 25, 28. Thus, even after two amendments, it is still unclear if Plaintiff was ever even
22   denied these accommodations. Further, even if these accommodations (the private office and
23   flexible work schedule) have been denied, Plaintiff's allegations have not established that in light
24   of his job functions (which include interacting with the public and giving public presentations)
25   that a reasonable accommodation is available and that affording it would not cause his employer
26   an undue hardship.

27         Plaintiff's allegation that there is no business necessity for having him sit at the counter
28   when no customers are present is conclusory and it is in conflict with his own description of the

public-facing function of his job description. In short, while Plaintiff admits that interacting with the public is an essential function of his job, his objection to sitting at the front counter when no customers are present (while stating that he doesn't mind sitting there when customers are present) rings hollow and overlooks Defendant's requirement to have somebody present at the front counter when customers arrive. Given his admission that interacting with the public (and, hence, being available to meet with customers when they arrive) is within the scope of his essential job functions, Plaintiff has failed to show that a reasonable accommodation (insulating him from sounds, lights, smells, and other environmental stimuli) is available, let alone allege facts establishing that it would not place an undue hardship on the operation of the employer's business. Instead, Plaintiff merely asserts, in conclusory fashion, that having an empty front counter is not an undue hardship. However, as Defendant points out (*see* Def.'s Mot. (dkt. 26) at 13), Plaintiff's assertion ignores the logical, safety, and logistical concerns that arise with a vacant front counter. Consequently, Plaintiff has failed to allege facts that could support a failure to accommodate claim; and, because it appears that this defect cannot be cured by further amendment, Claim #1 (failure to accommodate) is **DISMISSED with prejudice**.

Plaintiff's second claim alleges that he was retaliated against because of the following protected activities: asking for reasonable accommodations; asking that his need for a private office "be respected"; complaining to the EEOC; participating in an investigatory interview by the DFEH; expressing opposition to the medical questionnaires; attempting to gather evidence by making document requests; and, filing grievances. *See* SAC (dkt. 25) at ¶ 39. Plaintiff's retaliation claim was previously dismissed with leave to amend for its failure to allege any causal connection between what he had (improperly) contended to be adverse employment actions and his averred protected activities. *See* Order of Dismissal (dkt. 20) at 7.

As mentioned in the court's previous dismissal order, to present a *prima facie* case for ADA retaliation, a plaintiff must show that (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and, that (3) there exists a causal connection between the protected activity and the adverse employment action. *See* 42 U.S.C. § 12132; *see also Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003). Adverse employment actions are defined

broadly and not limited to such actions as discharges, transfers, or demotions. *See Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Because a failure to accommodate is a separate cause of action under the ADA, see 42 U.S.C. § 12112(b)(5)(A), it cannot be viewed as an adverse employment action for other purposes. In other words, since an adverse employment action is an element of a *prima facie* failure-to-accommodate claim in the Ninth Circuit, *see Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003), it would defy logic to view an employer's failure to accommodate as an adverse employment action because doing so would render the entire failure-to-accommodate cause of action into an element of itself. Here, Plaintiff asserts two adverse employment actions: (1) the fitness for duty medical exam; and, (2) the later-rescinded reprimand for failure to post projects in a tracking software system.

As to the fitness for duty exam, "[u]nder EEOC's regulations, employers are allowed to require medical examinations, such as Fitness for Duty examinations, in an effort to comply with the interactive process and discover necessary accommodations." *See e.g., Carlson v. City of Spokane*, 2014 U.S. Dist. LEXIS 148976, *31-32 (E.D. Wash. Oct. 20, 2014) (citing 29 C.F.R. § 1630.14(c)(1)(i)). Considering Defendant's duties under the ADA and the fact that Plaintiff had already informed Defendant of his disability, this examination was undoubtedly job-related and a business necessity rather than any sort of adverse employment action. In other words, the court finds that the fitness for duty examination was job-related, consistent with business necessity, and indeed, that it was a necessary part of the interactive process; as such, it cannot be considered to constitute an adverse employment action for retaliation purposes. Further, the fitness for duty exam did not materially impact Plaintiff's employment, which is the lynchpin of adverse employment action analysis. *See generally Brooks*, 229 F.3d at 928.[2] Instead, as part of the

---

[2] "California defines adverse employment actions as those 'materially affect[ing] the terms, conditions, or privileges of employment.'" *Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017) (quoting *Yanowitz v. L'Oreal USA*, Inc., 36 Cal. 4th 1028, 1052 (2005)). "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of

11

interactive process, an employer is entitled to meet with an employee, to seek information from health care providers about the employee's work limitations, and to send an employee to a fitness for duty examination. *See Anthony*, 955 F.3d at 1134 ("an employer has a mandatory obligation to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations."). It should also not go without mention that Defendant only scheduled the fitness for duty examination *after* Plaintiff refused to provide further documentation because he stubbornly maintained that "sufficient documentation had already been provided . . ." *See* SAC (dkt. 25) at ¶ 12. In any event, as mentioned above, Plaintiff's fitness for duty examination was not only not an adverse employment action, it was a part of the interactive process.

As to the later-rescinded reprimand based on Plaintiff's purported failure to post projects in a tracking software system, Plaintiff's FAC has failed to draw any causal connection between the reprimand and his protected activity – in other words, Plaintiff has failed to show that the reprimand was motivated by retaliatory animus. Plaintiff simply asks the court to accept the implication that such a causal link existed due to the fact that the reprimand was later found to be unwarranted and was rescinded – however, that is not possible. Establishing the causal link needed here requires more than coincidence, innuendo, or assumption. The Supreme Court has mandated that a "but-for" causation standard must be applied to Title VII retaliation claims. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)."). To establish a retaliation claim in that context, a plaintiff must "establish that his or her protected activity was a *but-for* cause of the alleged adverse action by the employer." *Id*. at 362. Since *Nassar*, the Ninth Circuit has applied its *but-for* causation standard to ADA retaliation claims. *See T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir.

---

the workplace," with the goal of "afford[ing] employees the appropriate and generous protection against employment discrimination that . . . FEHA was intended to provide." *Yanowitz*, 36 Cal. 4th at 1054; *see also Ray v. Henderson*, 217 F.3d 1234, 1240-41 (9th Cir. 2000) ("[A] wide array of disadvantageous changes in the workplace constitute adverse employment actions . . . We define 'adverse employment action' broadly."). In some cases, a mere warning letter may constitute an adverse employment action. *See Fonseca v. Sysco Food Servs. of Ariz.*, 374 F.3d 840, 847 (9th Cir. 2004).

12

2015) ("In [Nassar], the Court held that the standard for the 'causal link' is but-for causation, a more stringent test. Other circuit and district courts have applied Nassar to ADA retaliation claims, and we do as well."); *see also Davis v. Phillips 66*, 2018 U.S. Dist. LEXIS 106890, *6-7 (N.D. Cal. 2018). While proximity in time between the protected activity and the allegedly retaliatory decision can constitute some evidence of a retaliatory motive or of a causal link (*see Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 n.21 (9th Cir. 2006) (applying the same test in the First Amendment context), such temporal proximity neither exists here, nor can it be said that a plethora of other plausible explanations could not have explained the chain of events surrounding the reprimand and its subsequent rescission – thus, the but-for standard cannot be said to have been satisfied here. The written reprimand was issued in March 2022. *See* SAC (dkt. 25) at ¶ 27. However, the overwhelming majority of the alleged protected activity had occurred long before the written reprimand was issued (e.g., the HR and the EEOC complaints were lodged on July 14, 2021, 8 months prior to the written reprimand; Plaintiff began seeking accommodations in 2016; Plaintiff began complaining about the interactive process in early 2021). Accordingly, Plaintiff's SAC lacks any facts that could even remotely lend support to a finding that temporal proximity could even imply a cause-and-effect relationship between any alleged protected activity and the reprimand. Thus, no causal connection has been established between Plaintiff's reprimand and any of his protected activities.

Through a series of other contentions, Plaintiff has attempted to arbitrarily attribute retaliatory animus to a host of irrelevant actions (some of which are part of the interactive process, while others are clearly unconnected to his protected activities); however, as mentioned, none of the facts pleaded in the SAC demonstrate any causal link between any protected activity and either of Plaintiff's averred incidents of adverse employment action. By way of example, Plaintiff repeatedly refers to Defendant's failure to respond to his record requests regarding his "ADA status." *See* SAC (dkt. 25) ¶ 52. However, he does not explain how Defendant's failure to respond to his document requests forms any causal nexus between either the written reprimand or the fitness for duty exam and any of his protected activity. Similarly, Plaintiff complains about Defendant conducting an interactive process meeting with Plaintiff (remotely) while he was sick at

home – but he does not make the connection to explain how that demonstrates that either the written reprimand or fitness for duty exam were retaliatory in nature. *See id*. at ¶ 52. Plaintiff likewise asserts that Defendant told him that he was going to be moved out of his private office – although it appears that that may have never happened – but he does not explain how this demonstrates that either of his two averred adverse employment actions occurred because of his protected activity. *See id*. at ¶ 55. Thus, because Plaintiff's SAC has failed to establish the necessary causal connection between any of his protected activities and either of his averred adverse employment actions, and because it appears that granting further leave to amend would be futile, Claim#2 (ADA retaliation) is **DISMISSED with prejudice**.

Plaintiff's third claim pleads interference with the exercise of his rights under the ADA. *See* FAC (dkt. 25) at 21-23). The ADA prohibits interference with a person who has asserted his or her rights under the ADA. See 42 U.S.C. § § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."). In the Ninth Circuit, a plaintiff must demonstrate – and therefore must properly allege – that he or she has suffered a "distinct and palpable injury" as a result of the interference. *See Brown*, 336 F.3d at 1193. "That injury could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Id*. The Ninth Circuit, in *Brown*, 336 F.3d at 1191, explained that evaluation of interference claims under the ADA should draw on case law interpreting and applying the anti-interference provision of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, which uses language identical to section 12203(b). As *Brown* put it, "it is clear that, given the broad remedial purpose of the ADA[3], the plain language . . . clearly prohibits a supervisor from threatening an individual with <u>transfer, demotion, or forced retirement</u> unless the individual foregoes a statutorily protected accommodation . . . [and] [w]e emphasize that conclusory allegations – without more – are insufficient to state a

---

[3] *See* 42 U.S.C. § 12101(b)(1) ("It is the purpose of this chapter to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.").

violation . . . [thus] [a]n ADA plaintiff must also demonstrate that she has suffered a "distinct and palpable injury" as a result of the threat [such as] either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Brown*, 336 F.3d at 1192-93 (internal quotations and citations omitted) (emphasis supplied). It is therefore clear from *Brown*, that the sort of coercion, intimidation, threats, or interference contemplated in § 12203(b) are largely similar to the adverse employment actions requirement applied to ADA retaliation and discrimination claims.

This claim was previously dismissed with leave to amend because Plaintiff's FAC had only reiterated his dissatisfaction with the interactive process by complaining of "repeated threats of a fitness for duty exam," (*see* FAC at ¶ 33) rather than stating any facts that would show that Defendant coerced, threatened or intimidated him related to his demands for reasonable accommodations; also, instead of pleading a "distinct and palpable injury" as contemplated by *Brown*, Plaintiff had merely complained that his flexible work schedule accommodation had been taken away, however, that was not the sort of palpable injury contemplated by § 12203(b) – thus the previous dismissal with leave to amend. *See* Order of Dismissal (dkt. 20) at 8.

Following amendment, Plaintiff has still not alleged any facts that would show that Defendant coerced, threatened, or intimidated him in any way. Instead, Plaintiff's SAC describes the extensive interactive process in which Defendant engaged, and the accommodations that Plaintiff was provided. While Plaintiff asserts that one or more of his supervisors told him that he does not have a documented disability, Plaintiff's characterization – to the effect that "repeatedly telling someone with a documented disability that it doesn't exist is an act of intimidation," (*see* SAC (dkt. 25) at ¶ 58) – is more in the nature of a conclusory and argumentative assertion rather than a factual allegation. However, in light of the extensive interactive process in which Defendant engaged, and the repeated efforts expended by Defendant to obtain documentation of Plaintiff's disability (and to accommodate it), the statements ascribed to Plaintiff's department director and supervisor do not objectively appear coercive, intimidating, or threatening. Instead, they appear to be intended to appraise Plaintiff that further documentation was required. Likewise, Plaintiff's assertion that he was told that he would be moved out of his private office (without stating where

15

he would be moved to, or even if he was moved at all) (*see id*. at ¶ 59) is insufficient to be objectively interpreted as part and parcel of any effort to threaten, coerce, or intimidate him regarding the exercise of the ADA rights. Employees are moved from one workstation or office to another in the ordinary course of business all the time, and there appears nothing remarkable about Plaintiff's assertions in this regard. In addition to the fact that the SAC does not allege any intention on Defendant's part to relocate Plaintiff to another workspace (something for which Defendant would be well within its rights to do), there is also the difficult-to-overlook dichotomy that – by Plaintiff's own admission – two of the four essential functions of his job involve interacting with the public, casting considerable doubt on the reasonableness of his demand for a private office while employed in such a capacity. At bottom, Plaintiff has presented no facts to demonstrate any hint of threat, coercion, or intimidation based on the mere expression of an intention by Defendant to have Plaintiff reportedly move from one workspace to another. In other regards, Plaintiff also asserts that Defendant's demands for medical documentation can serve as a basis for his interference claim. *See id*. at ¶ 60. However, as mentioned above, the ADA permits, indeed it requires, employers to engage employees requesting accommodations in the interactive process, of which requesting such medical documentation is an integral part. *See* Anthony, 955 F.3d at 1134 ("an employer has a mandatory obligation to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations."). Plaintiff has not alleged any facts that could explain how his employer's requests for medical documentation, substantiating the existence or persistence of his alleged disability, and the necessity and suitability of his requested accommodations, is in any way coercive, threatening, or intimidating.

In any event, as Defendant has pointed out, Plaintiff has not even alleged that he has actually been made to work any schedule other than one of his own choosing, or that he does not still work in a private office. *See* Def.'s Reply (dkt. 28) at 7) (citing Pl.'s Opp. (dkt. 27) at 4). As was the case with the FAC, the SAC has failed to present any facts that could even indicate that Plaintiff was in any way coerced, intimidated, threatened, or interfered with in any way related to the exercise or enjoyment of any of his ADA rights. Also, in addition to his failure to plead any

facts that could constitute coercion, threat, intimidation, or any other interference with Plaintiff's ADA rights – the SAC also fails to plead any cognizable incident of palpable injury. Given that Plaintiff relies (again) on the fitness for duty examination and the reprimand, those events lack traction. As to the fitness for duty examination, that is part of the interactive process and cannot be relied upon for showing palpable injury as the term is understood. *See Brown*, 336 F.3d at 1193. As for the reprimand, as discussed above, Plaintiff has not alleged any logical or factual connection between the reprimand and any of his ADA rights – nor does the timeline of events (as discussed above) lend any support for such a conclusion. In short, beyond Plaintiff's conclusory and argumentative assertions, there are no properly alleged facts that could be relied upon to establish either prong of an ADA interference claim – let alone both; and because it appears that further leave to amend would be similarly fruitless in this regard, Claim#3 (ADA Interference) is **DISMISSED with prejudice**.

## CONCLUSION

For the reasons stated herein, Defendant's Motion (dkt. 26) is **GRANTED**, and Plaintiff's SAC (dkt. 25) is **DISMISSED with prejudice**. A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: October 18, 2023

ROBERT M. ILLMAN
United States Magistrate Judge